Bradbury, J.
The plaintiff filed in tne court of common pleas a petition in which he alleged that one of the defendants, Nicholas Miller, had conveyed to his co-defendant, Nelson E. Matthews, certain real estate in the petition described, for the purpose of hindering and delaying the plaintiff and the other creditors of Miller in the collection of their debts. The action was brought under section 6344 of the Revised Statutes which declares : “All transfers, conveyances or assignments made by a debtor, or procured by him to be made, with intent to hinder, delay or defraud creditors, shall be declared void at the suit of any creditor.” * * *
The plaintiff averred the recovery of a judgment against the defendant, Miller, and the return of an execution unsatisfied for want of property whereon to levy, and expressly averred that the conveyance made by Miller to his co-defendant, Matthews, was for the fraudulent purpose of hindering and delaying the creditors of Miller. He appended to his petition certain interrogatories which he called upon the defendant, Matthews, to answer, and to which reference will be made hereafter. To this petition the defendant, Matthews, filed the following answer:
*488 “Now comes the defendant, N. E. Matthews, and for answer to the petition says that prior to and on the 3rd day of February, A. D., 1885, the defendant, Nicholas Miller, was indebted to various persons in about the sum of ten thousand dollars, of which the sum of about eighty-one hundred dollars consisted of judgment liens on the premises described in the petition; that among said judgment credits was the Michigan Mutual Life Insurance Company, upon whose judgment in this court for about seventy-seven hundred dollars the said insurance company had, at the November term of A. D., 1884, procured an execution and order of sale to be issued, directed and delivered to the sheriff of this county, under which order of sale the said sheriff had duly appraised and advertised all of said premises for sale; that at said last named date there was no market for said real estate, and it could not have been sold at sheriff’s sale for more than two-thirds of its actual value, which actual value thereof was then about the sum of $15,000, and it was then believed by these defendants, and by the principal creditors of said Miller, with whom said defendants consulted, that if the forced sale of said premises could be avoided and the said property could be sold at private sale upon a reasonable credit, or for cash, as the purchaser might desire, said premises could be sold for a sum sufficient to pay in full all of the said debts of said Miller, and thereupon and for the purpose of selling said property for its fair value, and applying the proceeds to the payments of said indebtedness of the said Miller, the said Miller, on said 3rd day of February, A. D., 1885, conveyed all said real estate to this answering defendant and his heirs by a dee^ *489 trust in the nature of a mortgage, with power to sell any or all of said real estate at its fair value for each, or on reasonable credit, and, at the same time, and as a part of the same transaction-, it was agreed by and between this answering defendant and the said Miller that this defendant should accept said conveyance and should, in his own discretion, advance money and apply the same, either in procuring* an extension of the time of paying said liens until this defendant should sell said premises at their value, or, in paying the said liens off, as to this answering defendant might seem most likely to realize the highest prices for said real estate. And it was further agreed by and between this answering defendant and the said Miller that this answering defendant should sell certain notes of said Miller, then deposited as collateral security with A. Y. Rice & Co., and with George B. Cass, to secure debts then owing to said A. V. Rice & Co., and to said George B. Cass, said sale being subject to the said liens of said A. Y. Rice & Co., and said George B. Cass, and apply the surplus of said notes remaining after paying the said liens of said A. V. Rice & Co., and said George B. Cass on the said debts of said Miller ; and it was further agreed in said contract that this answering defendant should have a right, upon the sale of any or all of said property, to first pay himself out of the proceeds the amount of all such advancements of money which he had therefore made in pursuance of said contract, with interest thereon from the time of making such advancements, and this defendant avers that he accepted such conveyance, and that since the date of said conveyance, and up to the first day of January, A. D., 1891, he had sold the following par *490 cels of said real estate, at the following prices, to wit:
N. | N. E. i Section 27,. Palmer township, Putnam county, Ohio, for $2,600.
That since the date of said conveyance and up to the 1st day of January, A. D. 1891, this answering defendant has paid of his own money in taxes and assessments on said real estate, the sum of nineteen hundred fifty-five and 84-100 dollars, which, with interest thereon at 8 per cent, up to said last date, amounted to $2,815.42; that this defendant had, up to said last date, paid out of his own money upon said liens and indebtedness, the sum of $6,549.48, which, with interest at the rate of eight per centum up to said last date, amounted to $9,370.86. This answering defendant further avers that from the date of said deed up to the 1st day of January, A. D. 1891, he made diligent effort to sell said real estate at a fair value, but only succeeded in selling the parts thereof last above described; that at said last date this answering defendant had paid in taxes, assessments and liens on said real estate in excess of the amount of said notes and of all rents, issues and profits by him received from said real estate so sold as aforesaid, the sum of $14,123.07, which said last named sum was at said last named date greater than the then value of all of said real estate, and at said last named date this answering defendant and the said Nicholas Miller had a settlement in full of all the matters and things covered by said deed and contract, and in consideration of the said advancements by this answering defendant, so as aforesaid by him made, and of the payment by this answering defendant of said taxes, assessments and liens, the said Miller then and there released his equity of *491 redemption in said premises to this answering defendant, who is now the owner in fee simple. This answering defendant further avers that said deed from the said Miller to him recited the execution of the above described contract as a part of the consideration for said deed, and that immediately after the execution of said deed, and on, to-wit, the -day of February, A. D., 1885, this defendant procured the said deed, to be duly recorded in Vol. No. 46, page 541, in the deed records of said Putnam county, and since the said release of said equity of redemption this answering defendant has expended in the necessary repairing and improving’ of said premises and in the payment of the legal assessments and taxes thereon a large amount of money in excess of all the rents, issues and profits of said premises, and this answering defendant denies all and singular the allegations of the petition not hereinbefore expressly admitted.”
The defendant, Matthews, also answered the interrogatories that had been propounded to him, which, so far as material, are as follows:
(Fourth interrogatory): “What, if any, money or other thing- of value, did you pay or deliver to said Nicholas Miller at, or about, the time of the execution and delivery of said deed and intended to operate as a consideration for the execution and delivery of said deed?”
(Answer to fourth interrogatory): “Nothing except a certain contract hereinafter attached to these interrogatories.”
(Fifth interrogatory): ‘ ‘Did you pay any money or engage to do so to the said Nicholas Miller as consideration for the execution and delivery of said deed, and was the same or any part thereof unpaid at the date of filing this petition?”
*492 (Answer to fifth interrogatory): ‘ H agreed to do nothing except that stated in said contract.”
(Seventh interrogatory): “What amount did the said Nicholas Miller owe you at the time of the execution and delivery of said deed to you?”
(Answer to seventh interrogatory): “None.”
(.Sixteenth interrogatory): “What, if any, property, real or personal, was the said Nicholas Miller possessed of immediately after the execution and delivery of said deed to you ?’ ’
(Answer to sixteenth interrogatory): “None, to my knowledge. ’ ’
(Seventeenth interrogatory): “Did you know that at said time ?”
(Answer to seventeenth inter rogatory): “ Yes. ”
(Twenty-first interrogatory): “Was any contract made between you and said Nicholas Miller providing for a part of the consideration for the execution and delivery of said deed from Nicholas Miller to you ?”
(Answer to twenty-first interrogatory): “We entered into a contract. The consideration is expressed in the contract.”
(Twenty-second interrogatory): “Was it in writing- ?”
(Answer to twenty-second interrogatory): “Yes.”
. A copy of which writing is in the words and figures following-, to-wit:
“This agreement made and entered into this 3d day of February, A. D., 1885, by and between N. E. Matthews and Nicholas Miller.
Witnesseth, That whereas the said Nicholas Miller is largely indebted to divers and sundry parties who are now threatening- and are about to sell certain real estate of the said Nicholas Miller *493 to secure the payment of their claims against him, and, whereas, in order to gain time and to avoid sales of the property of said Miller under process of law, the said N. E. Matthews for and in consideration of a conveyance to him of certain real estate by the said Nicholas Miller by these presents obligates himself to procure and obtain a suspension of a certain writ of execution and order of sale of a certain judgment of foreclosure against the said Nicholas Miller in favor of the Michigan Mutual Life Insurance Company for the sum of about seventy-seven hundred ($7700), rendered and obtained at the November term, A. D. 1884, of the court of common pleas of Putnam county, Ohio, and docketed and known to said court as caiise numbered 3984 until the first day of August, A. D., 1885, and the said N. E. Matthews for and in consideration of the foregoing, agrees to pay all taxes due on all of the lands owned by and taxed in the name of said Miller, due December, A. D., 1884, and to pay all legal costs incurred by both plaintiff and defendants in said cause numbered 3989, to this date, as well as an attorney fee of seventy-five dollars to Messrs. McKenzie and Robb, attorneys at law, of Lima, Ohio.
Said deed of conveyance by the said Nicholas Miller to the said N. E. Matthews as before mentioned being for the conveyance of the following real estate, to-wit: (Here follows a description of the- property.)
Said deed being made and executed solely and only for the purpose of enabling said N. E. Matthews to procure the necessary funds to pay the said several amounts hereinbefore mentioned and such other funds as the said N. E. Matthews may from time to time advance to assist the said Nicholas Miller, and to pay upon the legal indebtedness of said Miller.
*494 It is understood and agreed that the said N. E. Matthews shall have full power and authority by virtue of the conveyance aforesaid at any time to sell all or any part of the real estate in said deed of conveyance described, at its fair market value, for cash or otherwise, as he may deem proper; and he is hereby authorized and required to apply the proceeds of such sale or sales so to be made to the payment and extinguishment of the legal liabilities of the said Nicholas Miller. And the said N. E. Matthews hereby agrees to reconvey to the said Nicholas Miller any or all of the real estate herein before mentioned and described, not sold or otherwise disposed of in accordance with the provisions of this agreement, upon the demand of the said Miller at any time after all the legal obligations of the said N. Miller shall be fully paid and satisfied which the said N. E. Matthews may have assumed or may assume, pay, or in any way be personally liable for.
Said N. Miller is to remain in the possession of all of said premises until the same may be sold or otherwise disposed of, and said Miller is to co-operate with the said Matthews in effecting sales of said real estate; and the said Matthews agrees that whenever the said Miller shall effect a reasonable sale of any of the said premises said Matthews shall make- a deed therefor to the purchaser upon the request of said Miller, the proceeds of said sale to be applied by said Matthews upon the indebtedness of said Miller as aforesaid.
Said Miller hereby undertakes and agrees to turn over to said Matthews all the rents, issues of and profits arising from said real estate saving and excepting sufficient to provide a reasonable support for said Miller and his family, to keep up necessary *495 repairs upon the farm and other premises and to properly provide and care for the live stock kept upon said premises. It is, however, agreed that should the said N. E. Matthews desire to, he may and shall have full authority to rent one hundred acres of said premises for a cash rental.
It is agreed that said N. E. Matthews shall have full power to settle all legal existing liabilities of the said Miller in such manner and upon such terms as he may deem fit and just.
It is agreed that all notes and credits belonging to the said N. Miller and by him deposited with A. V. Rice & Co. and George B. Cass, as collateral security for advancements by said parties made before this time to said Miller, are hereby transferred and sold to the said Matthews for the purpose of realizing the value thereof by sale or collection, subject however to any lien upon them that may exist in favor of said Rice & Co. or said Cass by reason of any previous agreement between them or either of them and the said Miller. And any and all sums so realized by the said Matthews from said notes shall be applied by said Matthews upon the indebtedness of said Miller in the discretion of said Matthews.
It is further agreed that said N. E. Matthews shall out of the proceeds of any sales of real estate he may make or moneys that he may receive by virtue of said deed of conveyance to him or by the provisions of this contract, he shall be authorized to reimburse himself for any and all advancements of money he may make for or in behalf of said Miller, and all such advancements shall bear interest at the rate of eight per cent, per annum. The said N. E. Matthews shall in no way become liable for any of the present indebtedness of said *496 Miller except as he shall see fit to voluntarily assume the same.
It is also understood that the said N. E. Matthews may at any time reconvey said real estate or such portion thereof as may remain undisposed of to the said Nicholas Miller, and the said Nicholas Miller shall then release said Matthews from any further effort in said Miller’s behalf, or from liability on any contract for the payment of the indebtedness of said Miller.
It is further agreed that said deed of conveyance herein before recited carries with it the right to mortgage or otherwise pledge any part or all of said premises by the said Matthews for purpose of obtaining money to pay any existing indebtedness of said Miller, or any indebtedness incurred by the said Matthews in behalf of said Miller.
It is also agreed that in case of the death of said N. E. Matthews said property or so much thereof as may remain undisposed of shall be at once reconveyed to the said Miller, and the estate of N. E. Matthews wholly released and saved from any and all obligations by reason of this contract or said first mentioned conveyances; and in case of the death of said Miller, pending the adjustment of the matters and affairs covered by this contract, that the contract shall remain in force and effect notwithstanding said demise, and the said N. E. Matthews shall consummate this agreement with the personal representation of the said Nicholas Miller.
In witness whereof the parties hereto affix their signatures this day and date first mentioned.
M. P. Goetschues. N. E. Matthews,
W. H. Meete, Nicholas Miller.
The record thus discloses that the plaintiff was a creditor of the grantor, Miller, when the deed *497 complained of was executed. That the claim has since been reduced to judgment. That execution has been issued on the judgment and returned unsatisfied, and that Miller has no property subject to levy or sale on execution. That the property was conveyed to the grantee for the purpose of preventing such seizure and sale and with a view to its ultimate sale by the grantee if that should become necessary to pay the grantor’s debts, and the application of the proceeds to such debts. Any surplus remaining after these debts were paid was to be returned to the grantor. The grantee, Matthews, thus became clothed with a trust. It became his duty to administer, in the manner agreed upon, the property thus conveyed to him. This agreement provided especially for the payment of the judgment or decree held by The Michigan Mutual Life Insurance Company. The costs made by both parties in the action in which that judgment had been recovered and a claim held by McKinzie & Robb, attorneys, for $75. No other debts were named in the agreement, and its terms, in so far as they related to the payment of Miller’s other debts, are ambiguous, but the agreement is fairly open to the construction that the parties to it did not contemplate a pro rata application of the proceeds of the property to the general indebtedness of Miller. On the contrary, the agreement is consistent with the right of Miller and Matthews and perhaps of Miller alone, to select the claims of certain other favored creditors of Miller and pay them in full to the exclusion of others. We think this brought the grantee, Matthews, within the terms of section 6343, Revised Statutes which reads as follows:
*498 “Section 6343. All assignments in trust to a trustee or trustees, made in contemplation of insolvency, -with the intent to prefer one or more creditors, shall inure to the equal benefit of all creditors in proportion to the amount of their respective claims, and the trusts arising under the same shall be administered in conformity with the provisions of this chapter.”
As the word assignment in this section embraces every form of conveyance that will operate to transfer title to property, the deed and accompanying contract involved here constitute such an assignment as the section contemplates. Gashe v. Young, 51 Ohio St., 376; Pendery v. Allen, 50 Ohio St., 121; Brown & Co. v. Webb, 20 Ohio, 389; Harkrader v. Leiby, 4 Ohio St., 602. The inability of the grantor to pay his debts, and the danger of his property being sacrificed by means of judicial sales, were the expressed motives that induced the transaction and shows that it was done in contemplation of the insolvency of Miller. By the express terms of the agreement under which Mr. Matthews was to administer the trust, the claim of McKinzie & Robb, and the costs incurred in reducing the insurance company’s claim to judgment, are to be paid in full.
So that, leaving out of consideration the judgment of the Michigan Mutual Life Insurance Company, which had already become a lien upon the real estate in question, and also leaving out of consideration the right of the grantor and grantee to select other favored creditors of Miller, to whom payment in full might be made, and also ignoring the fact that the conveyance and contract embraced all, or substantially all the property owned by Miller, yet as the undeniable effect of the trans *499 action was to prefer McKinzie & Robb and the costs above named, that is enough to satisfy the requirement of the statute that the assignment ‘ ‘shall have been made with intent to prefer one or more creditors.”
The grantee, Matthews, in his original answer filed in the court of common pleas alleged that, “This answering defendant further avers that from the date of said deed up to the 1st day of January, A. D., 1891, he made diligent effort to sell said real estate at a fair value, but only succeeded in selling the parts thereof last above described; that at said last date this answering defendant had paid in taxes, assessments and liens on said real estate, in excess of the amount of said notes and of all rents, issues and profits by him received from said real estate so sold as aforesaid, the sum of $14,123.07, which said last named sum was at said last named date greater than the then value of all of said real estate, and at said last named date this answering- defendant and the said Nicholas Miller had a settlement in full of all the matters and things covered by said deed and contract, and in consideration of the said advancements by this answering defendant, so as aforesaid by him made, and of the payment by this answering defendant of said taxes, assessments and liens, the said Miller then and there released his equity of redemption in said premises to this answering defendant, who is now the owner in fee simple.”
This statement constituted no defense to a decree declaring the transaction to constitute an assignment for the benefit of the creditors of the ^ grantor, Miller. The rights of those creditors to have a decree to that effect accrued to them contemporaneously with the execution of the deed, *500 and any subsequent arrangement, contract or agreement entered into by and between Miller, the grantor, and Matthews, the grantee, should not effect these rights unless consented to by those creditors.
Upon the admitted facts disclosed by the record, therefore, the plaintiff was entitled to a decree declaring the conveyance made to Matthews to constitute an assignment for the benefit of the creditors of Miller.
The plaintiff, however, did not seem to desire this relief. He was determined to attack and destroy the deed on the ground that it was founded on fraud and collusion. And, pursuant to this determination, after he had been defeated in the court of common pleas upon this issue of fraud and collusion and had appealed the cause to the circuit court, he obtained leave to file and afterwards did file, an amended petition in which he reiterated the charges of fraud, averring “That the said Nelson E. Matthews then and there accepted the said transfer, conveyance and deed of conveyance of all said real estate without any consideration therefor and in consummation of a combination and conspiracy between the said Nicholas Miller and Nelson E. Matthews with the intent to hinder, delay and defraud the creditors of said Nicholas Miller, including said plaintiff, and that said transfer and conveyance of all said real estate is void as to the creditors of said Nicholas Miller, including said plaintiff.
‘ ‘That the title to all said real estate was transferred and conveyed to and accepted by said Nelson E. Matthews in secret trust and to be sold and accounted for and the proceeds of such sale to be secretly accounted for and secretly paid over to *501 said Nicholas Miller for the purpose of and with the intent to hinder, delay and defraud the creditors of said Nicholas Miller, including said plaintiff.”
Perhaps the motive for the persistent efforts of the plaintiff to establish fraud and collusion, and to obtain a decree under section 6344, Revised Statutes, declaring the deed void on that account, is to be found in the circumstance that the plaintiff had given notice under that section of the statute of the pendency and object of the action. If he obtained relief thereunder, he and those who might come in, secure costs, file cross-petitions, etc., would obtain priority in the distribution of the proceeds of the property over other creditors who had no specific liens. In his judgment it may have been quite clear that he and those who, pursuant to the notice, came in, would be entitled to such priority if he brought the case within section 6344, Revised Statutes, while he may have been in doubt respecting it if relief should be granted under section 6343, Revised Statutes. But whatever his motive might have been, this course, thus pursued by him, is adverted to only as affecting his right to costs and the allowance of an attorney fee.
To the charge of fraud and collusion thus reiterated in the circuit court the defendant, Matthews, interposed a denial; and as a distinct defense averred that the cause of action accrued more than four years prior to its commencement. And the cause was tried in the circuit court on these issues and a general finding made for the defendant. This finding exonerates Matthews from the charge of fraud and collusion, and the evidence fully sustained that finding. The record discloses nothing *502 to indicate that he did not act in perfect good faith in all that he did in the matter.
However, notwithstanding that no bad faith or fraud in fact was shown in the transaction, nevertheless, its effect was to remove from the operation of legal process the property of the grantor, Miller, and for that reason the deed was constructively fraudulent as against the plaintiff and other creditors of Miller under the rule laid down in Loudenback v. Foster, 39 Ohio St.. 203, and upon that ground plaintiff was entitled to relief under section 6344, Revised Statutes, if his action had been commenced before the statute of limitations of four years had attached. Doubtless the court of common pleas, as well as the circuit court, recognized this constructively fraudulent character of the transaction, but under the rule laid down in Combs v. Watson, 32 Ohio St., 228, denied relief because the action had not been commenced within four years from the time it accrued.
Whatever the motive of the plaintiff was in pursuing this issue of fraud and collusion, and in contesting the plea of the statute of limitations which grew out of that issue, it is manifest that the interests of the general creditors of Miller were not advanced by this course of proceeding. For, notwithstanding the issues thus joined in the circuit court, the answer of the grantee, Matthews, filed in the court of common pleas, and which disclosed the circumstances under which the property had been conveyed to him, had not been withdrawn, but remained a part of the record, as did the interrogatories and the answers thereto, including the contract prescribing the manner in which this property was to be administered by the grantee. This contract and the deed constituted *503 one entire transaction and should be construed together, and when thus construed that transaction, as has already been stated, was in law an assignment of the property involved for the benefit of the creditors of the grantor, Miller. The issue taken upon the charge of fraud and collusion, as well as that taken upon the averment of the cause of action that accrued more than four years before its commencement, were, therefore, both immaterial in as far as the rights of general creditors were concerned.
The issue respecting fraud and collusion was immaterial in this respect, because the relief to which the plaintiff, as the representative of the creditors of Miller was entitled under section 6343, Revised Statutes, upon the undisputed facts, did not depend upon the establishment of fraud, either actual or constructive, but might properly rest on the fact that the deed and agreement created a trust. And as a cause of action arising under that section does not depend upon fraud, or fall within any other class of actions that section 4982, Revised Statutes, requires to be commenced within four years, the issue growing out of the averment that the cause of action in this case had accrued more than four years' before the action was commenced, was also immaterial.
The petition contained a prayer for general equitable relief, and notwithstanding the circuit court found those immaterial issues for the defendant, it should have rendered such judgment as the undisputed facts disclosed by the record required, and, if necessary for that purpose should have directed the pleadings to be reformed to conform to those facts. The facts thus appearing, this court will proceed to render the judgment the circuit court *504 should have rendered. The plaintiff was entitled to this relief from the moment the defendant Matthews filed his answer in the court of common pleas and answered the interrogatories propounded to him, and doubtless it would have been granted if the plaintiff had demanded it instead of pursuing the question of fraud and collusion. Much delay and most of the cost should be attributed to this course thus pursued by the plaintiff. On this account we think he should not be allowed to recover costs made by him in the common pleas and circuit court. Nor should he be allowed an attorney fee out of the funds that may accrue from a sale of the property involved in this action.
Judgment reversed, and judgment for plaintiff in error.